

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed December 19, 2007                  **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In Re: § | | |
| § | | |
| ROBERT WARREN PAIGE, § | | CASE NO. 04-20147-RLJ-7 |
| § | | |
| Debtor § | | |

_____

| | | |
|---|---|---|
| KENT RIES, Trustee § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| v. § | | ADVERSARY NO. 07-2015 |
| § | | |
| ROBERT WARREN PAIGE, § | | |
| § | | |
| Defendant § | | |

**MEMORANDUM OPINION**

The Court considers whether to grant a jury trial upon the demand for jury trial made by

the plaintiff, Kent Ries ("Ries"), chapter 7 trustee. The defendant, Robert Warren Paige

("Paige"), has filed his motion to strike Ries's jury demand. This case is presently set for trial on the Court's May 15, 2008 docket.

## Background

This action arises out of the same facts outlined by the Court in its Memorandum Opinion of March 28, 2007, which was issued on the motion by Ries requesting that the Court sanction Paige for his unauthorized taking and selling of four classic cars. As set forth in the Memorandum Opinion, the Court concluded that Paige wrongfully took and sold four cars that were owned by Bobladon, Ltd., which was, in turn, a major asset of the bankruptcy estate as recognized by a prior global settlement agreement that had been entered into between Ries, as trustee, and Paige (including Paige's wife and affiliated companies).[1] The Court further concluded that Paige's conduct regarding the four cars and in his dealings with the trustee concerning the cars was intentional, deceitful, and in bad faith, and he thereby violated certain duties he had as a debtor under chapter 7 of the Bankruptcy Code. The Court levied a monetary sanction of $80,000 against Paige, an amount it determined was necessary to cover the attorney's fees and expenses incurred by Ries in recovering the proceeds from the four cars and to deter similar conduct by Paige in the future.

The present action goes a step further and seeks both equitable relief and monetary damages based upon substantive causes of action. Ries, as plaintiff, alleges that Paige's conduct in taking and selling the four cars and his efforts to conceal and benefit from such actions amount to fraud, fraudulent inducement, and conversion. As a result, Ries requests rescission of the

---

[1] The Court refers to the March 28, 2007 Memorandum Opinion for a full recitation of the facts that underlie this adversary proceeding.

global settlement agreement, relief under Rule 60(b) of the Federal Rules from the order dismissing adversary number 05-2007 (which was dismissed pursuant to the global settlement agreement), reinstatement of adversary number 05-2007, actual and punitive damages resulting from the alleged fraud and conversion, and revocation of Paige's discharge under section 727(d) of the Bankruptcy Code.

### Right to Jury Trial

A bankruptcy court must recognize the right to a jury trial if the party requesting a jury trial has a right to a jury and has not waived such right. *See* 28 U.S.C. § 157(e); *Hays v. Equitex, Inc. (In the Matter of RDM Sports Group, Inc.)*, 260 B.R. 915, 925 (Bankr. N.D. Ga. 2001). In such instance, if the parties consent to a jury trial before the bankruptcy court, the bankruptcy court may conduct the jury trial. 28 U.S.C. § 157(e). If one party does not consent, then a party will need to move the district court to withdraw its reference of the case so the jury trial can be conducted in the district court. *See Blackwell v. Zollino (In re Blackwell)*, 267 B.R. 724, 730-31 (Bankr. W.D. Tex. 2001) ("the bankruptcy judge has no legal or procedural means to get rid of the case … requesting a jury trial is an exercise of a constitutional right, but does not operate to divest the bankruptcy court of subject matter jurisdiction.").

The right to a jury trial that is referenced in section 157(e) and in the bankruptcy context is the same right to a jury trial as that protected by the Seventh Amendment. *See Granfinanciera v. Nordberg*, 492 U.S. 33, 40-42 (1989); *Gaines v. Thomas (In re Thomas)*, 235 B.R. 864, 865-66 (Bankr. N.D. Tex. 1999). The Seventh Amendment guarantees a right to trial by jury in "[s]uits at common law." U.S. CONST. amend. VII. The Supreme Court has definitively interpreted this phrase "to refer to suits in which *legal* rights were to be ascertained and determined, in

contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera*, 492 U.S. at 41 (internal quotation and citation omitted). To determine whether a suit encompasses legal as opposed to equitable rights, the Supreme Court has outlined the following analysis:

> First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature. The second stage of this analysis is more important than the first. If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as factfinder.

*Id*. at 42 (quoting in part *Tull v. United States*, 481 U.S. 412, 417-418 (1987) (internal citations omitted).

Furthermore, the Seventh Amendment does not entitle a party to a jury trial on a claim that, while legal in nature, asserts a public right: "[t]he Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'" *Id*. at n. 4. Congress can constitutionally assign the adjudication of a party's *public* rights to a judge sitting without a jury even though the Seventh Amendment may otherwise mandate a jury. *See id.*

Thus, in order to determine whether a party has a right to a jury trial in a bankruptcy case, the court must analyze whether such party's claims and remedies involve 'private rights' that are legal in nature, as opposed to those based in equity. The court reviews the status of such actions and remedies under eighteenth century English law, with greater attention focused on the nature of the requested remedies than on the claims. *See id.*; *In re Jensen*, 946 F.2d 369, 371 (5th Cir.

1991) (overruled on separate grounds by *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)); *In re Thomas*, 235 B.R. at 866.

A party does not lose its right to a jury trial by combining legal claims with equitable claims or by seeking equitable as well as legal relief or remedies: "if [a] legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact." *Curtis v. Loether*, 415 U.S. 189, 196 n.11 (1974); *accord In re Jensen*, 946 F.2d at 372; *Duncan v. First Nat'l Bank of Cartersville Ga.*, 597 F.2d 51, 56 (5th Cir. 1979) ("It would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable. As long as any legal cause is involved the jury rights it creates control.").

### Waiver/Conversion of Right to Jury

A party may waive its Seventh Amendment Right to a jury trial. *See In re Clay*, 35 F.3d 190, 196 (5th Cir. 1994). Additionally, a party may, by participating in a bankruptcy case, have a legal claim, to which the right to a jury attaches, converted into an equitable claim, and therefore lose the right to a jury. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990). For example, a party litigant in an adversary proceeding who is also a claim-filing creditor in the bankruptcy case where the adversary is pending will lose his jury right if "by filing a claim against [the] bankruptcy estate the creditor triggers the process of allowance and disallowance of claims, thereby subjecting himself to the bankruptcy court's equitable power." *Id*. at 44 (internal quotations omitted).

The assertion of a counterclaim against a debtor-plaintiff by a creditor-defendant may be treated as the functional equivalent of filing a proof of claim. *See Leshin v. Welt (In re Warmus)*,

276 B.R. 688, 693 (S.D. Fla. 2002); *O'Neill v. New England Road, Inc. (In re Neri Bros. Constr. Corp.)*, 2000 WL 435507 *5-*6 (D. Conn. 2000); *Metro. Plant & Flower, Inc. v. Pottery Factory (In re Metro. Plant & Flower, Inc.)*, 1997 WL 638454 *5 (N.D. Ill. 1997); *Jobin v. Arnot (In re M & L Bus. Mach. Co., Inc.)*, 178 B.R. 270, 272 (Bankr. D. Colo. 1995). *But see Busch-Provo Ltd. v. Sloan (In re Larsen)*, 172 B.R. 988, 991-92 (Bankr. D. Utah 1993). When issues arise as part of the process of allowance or disallowance of claims, such issues are triable in equity. *See Granfinanciera*, 492 U.S. at 58. Additionally, issues that are integral to the restructuring of the debtor-creditor relationship are triable in equity. *See In re Jensen*, 946 F.2d at 374. As with the filing of a proof of claim, a counterclaim that seeks affirmative relief against the bankruptcy estate may trigger the allowance and disallowance of claims process, and thus subject the defendant to the equity jurisdiction of the bankruptcy court. *In re M & L Bus. Mach. Co., Inc.*, 178 B.R. at 272; *see also In re Neri Bros. Constr. Corp.*, 2000 WL at *6 (characterizing counterclaims as going "to the heart of the bankruptcy proceeding and the amount of property available for distribution to the creditors").

Accordingly, many courts have held that a defendant in an adversary proceeding loses any right he may have otherwise had to a jury trial when such defendant files a counterclaim against the estate. *See In re Peachtree Lane Assocs., Ltd.*, 150 F.3d 788, 798-99 (7th Cir. 1998); *In re Warmus*, 276 B.R. at 693; *Mendelsohn v. Lissauer (In re Mindeco Corp.)*, 212 B.R. 447, 450-51 (E.D.N.Y. 1997); *Carmel v. Galam (In re Larry's Apartment, L.L.C.)*, 210 B.R. 469, 473-74 (Bankr. D. Ariz. 1997); *Murray v. Richmond Steel & Welding Co. (In re Hudson)*, 170 B.R. 868, 874 (E.D.N.C. 1994); *Mather v. Cellxion, L.L.C. (In re Mobile Int'l Co., Inc.)*, 258 B.R. 466, 467 (Bankr. E.D. Okla. 2001); *Commercial Fin. Servs., Inc. v. Jones (In re Commercial Fin.*

*Servs., Inc.)*, 251 B.R. 397, 408 (Bankr. N.D. Okla. 2000) (holding that a counterclaim for breach of contract against debtor-plaintiff's claim for breach of contract served to bring the matter within the court's equity jurisdiction – it became part of the claims allowance or disallowance process and involved restructuring the debtor-creditor relationship, thereby waiving or converting jury rights).

The Supreme Court has held that a bankruptcy court sits both as a court of law and as a court of equity. *See Granfinanciera*, 492 U.S. at 57. Legal claims are not converted into equitable claims merely because they are asserted in a court of equity. *See Ross v. Bernhard*, 396 U.S. 531, 538 (1970) ("legal claims are not magically converted into equitable issues by their presentation to a court of equity"). However, when such claims are asserted solely under the court's equity jurisdiction, such claims have been converted to essentially equitable claims to which no jury rights attach. *Katchen v. Landy*, 382 U.S. 323, 337 (1966) (emphasis added) (internal citations omitted). As stated by the Supreme Court:

> [T]he right of trial by jury, considered an absolute right, does not extend to cases of equity jurisdiction. If it be conceded or clearly shown that a case belongs to this class, the trial of questions involved in it belongs to the court itself, no matter what may be its importance or complexity. So, in cases of bankruptcy, many incidental questions arise in the course of administering the bankrupt estate, which would ordinarily be pure cases at law, and in respect of their facts triable by jury, but, as belonging to the bankruptcy proceedings, they become cases over which the bankruptcy court, which acts as a court of equity, exercises exclusive control. *Thus a claim of debt or damages against the bankrupt is investigated by chancery methods*.

*Id*.

The Fifth Circuit has held that a debtor does not automatically waive jury rights merely by filing for bankruptcy. *See In re Jensen*, 946 F.2d at 374; *see also Southmark Corp. v. Coopers &*

*Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 935 n.16 (5th Cir. 1999); *Thomas*, 235 B.R. at 865. However, a debtor with an otherwise valid right to a jury may lose such right through conversion of his legal claim into an equitable claim if the proceeding invokes the (1) claims allowance or disallowance process, (2) the hierarchical ordering of creditors' claims, or (3) if the dispute is integral to the restructuring of the debtor-creditor relationship. *See Granfinanciera*, 492 U.S. at 58; *Billing v. Ravin, Greenberg & Zackin, P.A.*, 22 F.3d 1242, 1251 n.14 (3d Cir. 1994); *Germain*, 988 F.2d at 1330; *In re Jensen*, 946 F.2d at 374.

The Fifth Circuit, in *Jensen*, held that a debtor may pursue claims to augment the estate without losing its right to a jury, at least when the debtor seeks damages from a non-creditor. *In re Jensen*, 946 F.2d at 374. In such a case, there is no claim to allow or disallow, and there is no debtor-creditor relationship to restructure. *See id.* Thus, there is no conversion of legal claims into equitable claims. *See id. Jensen* hints that its result would have been different had the defendants to the adversary also been creditors of the estate: "debtor's claims do not here arise as part of the process of allowance and disallowance of claims …. Nor are they integral to the restructuring of debtor-creditor relations. *Rather they are essentially claims brought by the debtor (in possession) against non-creditor third parties to augment the bankruptcy estate.*" *Id*. at 374 (emphasis added) (internal citations and quotations omitted); *accord Hays*, 260 B.R. at 924-25 (finding no conversion of trustee-plaintiff's right to a jury because trustee asserted claims against non-creditor third parties; trustee's claims, therefore, had nothing "to do with the claims process and/or restructuring the debtor-creditor relationship").

Similarly, in *In re Heater*, the court there considered the debtor-plaintiff's demand for a jury trial. *Heater v. Household Realty Corp. (In re Heater)*, 261 B.R. 145 (Bankr. W.D. Pa.

2001). The debtor brought an action against a prepetition creditor seeking monetary damages relating to mortgages and loan agreements, as well as rescission of loan agreements. *Id.* at 147. The creditor-defendant did not file a proof of claim. *See id.* at 148-49. Nevertheless, the court held that the nature of the proceeding converted the debtor-plaintiff's legal claims into equitable claims: the proceeding invoked the claims allowance or disallowance process, which is equitable in nature, and to which no jury rights attach. *See id.* at 150. The court stated as follows:

> The circumstances surrounding the present case lead us to conclude that there is a 'close connection' between debtors' lawsuit against HRC and its scheduled claim. When seen for what it really is, debtors' lawsuit is integrally related to the bankruptcy process in general and to claims allowance in particular…. By bringing this adversary action, debtors seek to render the claims of HRC a nullity by requesting, in addition to monetary damages, rescission of the loan agreements with HRC, satisfaction of the mortgages debtors granted HRC, and an injunction against any steps by HRC to foreclose on the mortgages. Were debtors to prevail on their claims, the claims of HRC would vanish along with the liens it possesses.

*Id.* The court held that "at the very least, debtors [sought] to re-adjust the debtor-creditor relationship they [had] with HRC. As a result, debtors [were] not entitled to a jury trial even though their claims, when viewed in isolation from the bankruptcy case, [were] at least partially legal in nature." *Id.* Thus, even though the creditor-defendant failed to file a proof of claim, the fact that such creditor held a prepetition claim was itself sufficient to convert the nature of the proceedings. *See id.*

A recent opinion out of the Northern District of Texas, *Mirant Corp. v. Southern Company*, further delineates the right to a jury trial in bankruptcy. 337 B.R. 107 (N.D. Tex. 2006). There, Mirant Corporation ("Mirant"), the debtor-in-possession, sued The Southern Company ("Southern"). *Id.* In addition to being a defendant in the lawsuit, Southern was also a creditor in Mirant's bankruptcy proceeding, having filed proofs of claim in the Mirant bankruptcy

case. *Id*. at 121. Southern demanded a jury trial on the suit by Mirant. The bankruptcy judge issued a Report and Recommendation to the district court in connection with a motion by Southern seeking withdrawal of the reference to the bankruptcy court so a jury trial could be held in the district court. *Id*. at 113-14. The bankruptcy judge concluded that Southern had lost any right to a jury trial by filing its proofs of claim in the bankruptcy court and that, in addition, the claims that were subject of the lawsuit were predominantly equitable in nature, which further adversely affected Southern's jury trial right. *Id*. The district court disagreed. *Id*. at 121. The district court found that of the six causes of action asserted, at least three – fraudulent transfer and conveyance claims, breach of fiduciary duty claims, and illegal dividend claims – had to be characterized as legal in nature because monetary damages were sought. *Id*. at 120. The court concluded that Southern was entitled to a jury trial on these three claims. *Id*. at 120-22. The court held that Southern had not waived or forfeited its jury trial right by filing proofs of claim in Mirant's bankruptcy case. *Id*. at 121. In addressing whether Southern had forfeited its jury trial right, the court stated as follows:

> To start with, the court will not presume that a litigant has knowingly and willfully surrendered its constitutional right to a jury trial for the resolution of disputes that are only incidently related to the bankruptcy process. *See In re Rickel,* 320 B.R. at 518. And, as the Supreme Court has made clear, any waiver of constitutional rights must be voluntarily, intelligently, and knowingly made. *See Fuentes v. Shevin,* 407 U.S. 67, 94-95, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). In keeping with those principles, the Supreme Court consistently has held that courts must indulge in a presumption against waiver of the Seventh Amendment right to a jury trial. *See Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 81 L.Ed. 1177 (1937) (where the court said that "as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver"). *See also Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510-11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959). There is no suggestion in the record that Southern has knowingly, voluntarily, and intelligently waived its right to trial by jury.

*Id*.

Critical to the court's decision was its conclusion that resolution of the legal claims raised in the lawsuit did not directly affect the liability or priority of Southern's proofs of claim. *Id*. It cannot be assumed, therefore, that the filing of a proof of claim by a creditor-defendant will effect an automatic waiver or forfeiture of the creditor's right to a jury in an action against such creditor by the debtor (or, if applicable, a debtor-in-possession, or a trustee). Similarly, an action that may result in a recovery for the estate, thereby enlarging the bankruptcy estate, will not necessarily implicate the claims allowance process so as to negatively affect a party's right to a jury trial.

## Ries's Right to a Jury Trial

Ries is seeking money damages on the fraud and conversion claims and has therefore raised legal claims that traditionally entitle a litigant to a jury trial. Ries's complaint asserts that the facts supporting his claims have already been determined by this Court's Memorandum Opinion of March 28, 2006. The jury in the federal system resolves disputed facts. *In re Matthews*, 203 B.R. 152, 159 n.8 (Bankr. D. Minn. 1996) (citations omitted). This was succinctly explained by the court in *In re Fulda Independent Co-op*:

> Ultimately, the right to jury trial is only a right to the adjudication of disputed fact issues by a particular tribunal. Where the final disposition of a cause of action does not rest on the determination of disputed facts-that is, where it is amenable to summary adjudication under Rule 12(b)(6) or Rule 56-the Seventh Amendment right to jury trial does not even come into play. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 336 (1979), *aff'g* 565 F.2d 815, 819 (2d Cir.1977) (right to jury trial in action at law exists only when there is some genuine issue of material fact to be determined); *In re Peterson,* 253 U.S. 300, 310, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920); *Sullivan v. United States,* 788 F.2d 813, 816 (1st Cir.1986); *Allen v. Biggs,* 62 F.Supp. 229, 230 (E.D. Pa.1945) (where plaintiff's complaint is subject to dismissal or nonsuit, there is no right to jury trial).

130 B.R. 967, 977-78 (Bankr. D. Minn. 1991). At the status conference held by the Court to consider the jury demand, the Court asked Ries's counsel if, given the allegations in the complaint, any facts were at issue for a jury to decide. Counsel responded that a jury was needed to resolve all factual matters relating to damages. Therefore, Ries is presumably requesting that the Court determine all issues except damages.

Despite bringing legal claims and arguably raising factual issues, at least as to damages, certain other factors, particularly the very nature and posture of this case, do not, in the Court's view, favor allowance of a jury trial. First, this case is a suit by a chapter 7 trustee, Ries, against his chapter 7 debtor, Paige. The action arises from a settlement agreement approved by the Court. Ries elected to file this suit in the bankruptcy court. The Court must assume that it was Ries's design to have the matter fully litigated before the bankruptcy court. His argument that a jury is needed to decide the damages is not reflected in the pleadings; in fact, the complaint states that all facts have already been decided by this Court and, if Ries prevails, the Court can simply reinstate and decide the issues raised in adversary number 05-2007, which has already been litigated.[2]

Most important, the very settlement agreement that Ries contends he was fraudulently induced to enter into, and which underscores the entire dispute, states as follows: "The parties agree that this Settlement Agreement shall be construed and governed by the applicable federal law and/or the laws of the State of Texas and the Bankruptcy Court shall have exclusive

---

[2] Adversary proceeding number 05-2007 was tried before the Court through final argument and had been taken under advisement by the Court. The parties advised the Court that the matter was settled by the global settlement agreement shortly after the Court took the matter under advisement.

jurisdiction over this Settlement Agreement and the Parties". This provision, coupled with the requirement of 28 U.S.C. § 157(e) that all parties must expressly consent to the bankruptcy court conducting a jury trial (as opposed to the district court), further underscores a conclusion that any jury trial right was effectively waived. The Court rejects the argument by Ries's counsel that such provision means just the opposite – i.e., that Paige consented to the bankruptcy court conducting a jury trial by agreeing that the bankruptcy court has exclusive jurisdiction. The Court construes the provision to provide that the forum for any dispute concerning the settlement agreement must be the bankruptcy court. Paige did not expressly consent to the bankruptcy court conducting a jury trial and has now, by his motion to strike the jury demand, expressly stated that he does not consent to the bankruptcy court conducting a jury trial. Such consent could have easily been included in the provision had that been intended. Paige is enforcing the provision by denying consent. It is evident that Ries intended this action to be decided by this Court. Ries is a chapter 7 trustee and knows that bankruptcy courts do not typically hold jury trials. Ries's attorney admitted at the Court's status conference held in connection with the jury demand that the jury demand was made by "someone" in his office. It was only after the filing of the suit and, indeed, after the filing of the jury demand that he (Ries's counsel) decided that a jury trial was a good idea.

### Conclusion

The Court is mindful that the constitutional right to a jury trial should not be denied without careful consideration. The nature of this action, the manner in which it arose, and the agreements of the parties cause the Court to conclude that no right to jury trial lies here.

### End of Memorandum Opinion ###